## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO. 4:21-CV-00119-JHM**

**BLAINE ANDREW BRAY**                                                                               **PLAINTIFF**

**v.**

**KEVIN MAZZA,** *et al.*                                                                            **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' motion for summary judgment. [DN 20]. Fully briefed, this matter is ripe for decision.

### I. BACKGROUND

Plaintiff Blaine Andrew Bray ("Bray") was incarcerated at Green River Correctional Complex ("GRCC"). While at GRCC, he filed a *pro se* civil rights action under 42 U.S.C. § 1983 alleging that the Kentucky Department of Corrections, GRCC Warden Kevin Mazza, GRCC Mailroom Supervisor Clayton McRoy, and Kentucky Department of Corrections Commissioner Cookie Crews (collectively "Defendants") withheld and copied his "privileged legal mail" and that the originals are being discarded/shredded. Bray further alleges that McRoy read "personal and privileged mail and [withheld] court documents with case numbers added on the mail stating that if it does not have your name on the document you cannot receive the document" and discarded "first class postage return envelopes from attorney's which is attorney client privilege." [DN 1 at 4–5]. As a result of these violations, Bray filed suit against these Defendants.

Defendants claim that when privileged mail is received at GRCC, the inmate is called to the mail room and upon arrival the privileged mail is opened in front of the inmate, visually inspected for contraband, and then photocopied in the inmate's presence. [DN 20-1 at 2]. GRCC's new privileged mail protocol requires that all privileged mail, including blank or pre-paid

envelopes, be photocopied; the inmate is provided the photocopy while the original is destroyed. [*Id.* at 15]. Defendants state the protocol is in place to keep contraband from reaching inmates via mail. [*Id.* at 1]. Upon completion of its initial screening pursuant to 28 U.S.C. § 1915A, the Court allowed the following claims to proceed: Bray's claim for injunctive relief against all Defendants in their official capacity, Bray's First and Fourteenth Amendment claims against McRoy in his individual capacity, and Bray's state law claims against all Defendants. [DN 6]. Defendants now move for summary judgment. [DN 20].

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence … of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 3 (6th Cir. 2010); *see also United States v. Brown*, 7 App'x 353, 354 (3 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### III. DISCUSSION

#### A. Official Capacity Claims

Bray sues Defendants Mazza, Crews, and McRoy in their official capacities for injunctive relief to require the cessation of "all illegal activity in [the] mailroom." [DN 1 at 7]. "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Here, Defendants are employees of a Kentucky Department of Corrections prison and are therefore state employees.

On October 24, 2022, and after the briefs had been filed in this case, Bray filed a notice of change of address reflecting that he had been released from GRCC. [DN 24]. The Sixth Circuit has consistently found that an inmate's claim for declaratory or injunctive relief becomes moot

3

when he or she is transferred from the institution where the underlying complaint arose. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *see also Points v. Lane*, No. 5:19CV-P18-TBR, 2019 WL 2347373, at *3 (W.D. Ky. May 31, 2019) (citing *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (holding that a prisoner's claims for injunctive relief became moot after he was transferred to another facility)); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Accordingly, because Bray has been released from GRCC, his claims for injunctive relief are now moot.

### B. Individual Capacity Claims

In his complaint, Bray alleges First and Fourteenth Amendment claims against McRoy in his individual capacity. [DN 1 at 4–5]. McRoy argues the individual capacity claims against him should be dismissed due to Bray's failure to exhaust administrative remedies because he did not address all of the issues in his grievance form that he raises in his complaint. [DN 20-1 at 3].

#### 1. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") states, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is mandatory under the PLRA." *Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 511795, at *4 (W.D. Ky. Feb. 8, 2019) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court")). "In order to exhaust their available remedies, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Id.* (quoting *Jones*, 549 U.S. at 218). "The Sixth Circuit has held that

'a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures.'" *Luther*, 2019 WL 511795, at *5 (quoting *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011).

Kentucky Corrections Policies and Procedures ("CPP") 14.6 governs the grievance process at GRCC. It requires the inmate to prepare and file a grievance, and the grievance proceeds first to an "informal resolution" stage. CPP 14.6(II)(J)(1)(b). Significantly, CPP 14.6(II)(J)(1)(a)(4) requires the grievant to "include all aspects of the issue and identify all individuals in the 'Brief Statement of the Problem' section of the written grievance so that all problems concerning the issue or individuals may be dealt with during [the informal resolution stage]."

On August 18, 2021, Bray filed an initial grievance on the "Department of Corrections Inmate Grievance Form." In this grievance, Bray includes Clayton McRoy, Mailroom Supervisor and Kevin Mazza, Warden on the grievance form beside the heading "Brief Statement of the Problem." [DN 1-1 at 10]. He then states:

> Privileged Legal Mail is being withheld and copied. Original Court signed documents are privileged mail and are being illegally copied and discarded. Violation of KRS 196.035, 197.020 of Inmate Correspondence "Privileged Mail," licensed attorney, Government official, State or Federal Courts. . . . CPP 16.2 (Mailroom) 8-17-2021 Privileged Court Mail Documents.

[*Id*.]. In addition to raising these same First and Fourteenth Amendment claims in his complaint against all Defendants, Bray also alleges claims against McRoy for allegedly reading personal and privileged mail, withholding court documents with case numbers added on the mail, and "discarding the first-class postage return envelopes from attorney's which is attorney client privilege." [DN 1 at 4–5].

The Court agrees with McRoy that the claims against him for reading personal and privileged mail must be dismissed due to Bray's failure to exhaust administrative remedies. The

5

procedure explained in CPP 14.6(II)(J)(1)(a)(4) clearly requires an inmate to include all aspects of the issue and identify all individuals in the Brief Statement of the Problem section. "[A] grievance must provide notice of the problem at hand." *Luther v. Kentucky Dep't of Corr.*, No. 5:18-CV-00178-TBR, 2020 WL 760402, at *3 (W.D. Ky. Feb. 14, 2020) (citations omitted). Bray's grievance fails to give McRoy or prison officials fair notice of Bray's claim alleging that McRoy was reading legal mail. Therefore, the Court concludes that McRoy is entitled to dismissal of Bray's claims that he was reading legal mail due to a failure to exhaust administrative remedies.

However, Bray's remaining grievances regarding McRoy's interference with Bray's privileged mail satisfy the exhaustion requirements. Bray specifically mentions McRoy on the grievance form and informs both GRCC and McRoy that Bray's mail is being withheld, copied, and discarded.

### 2. First and Fourteenth Amendment Claims

Bray's complaint alleges that McRoy violated his First Amendment rights through the application of GRCC's new incoming privileged mail process by withholding and copying his "privileged legal mail" and then disregarding the originals, including pre-paid postage envelopes. [DN 1 at 4–5].

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). The Sixth Circuit has held that prison regulations governing legal mail are subject to a heightened standard. *Id.* at 873–74. This includes opening a prisoner's mail "pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)). To balance both the security interests of the prison and the First Amendment

rights of the inmate, courts have approved prison policies that permit prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539 (1974); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Accordingly, even constitutionally protected mail can be opened—but not read—by prison officials for the purpose of inspecting it for contraband.

A jail policy "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The United States Supreme Court in *Turner* identified four factors to aid in determining whether the policy is "reasonably related to legitimate penological interests": "(1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation." *Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992); *see also Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

"If the restriction or practice [is] reasonably related to legitimate prison concerns, there is no violation of the First Amendment." *Washington*, 2021 WL 2895192, at *6. Courts are to give "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). As the Sixth Circuit has noted, "a trial court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999) (citations omitted). Rather, "[t]he four *Turner* factors are . . . simply 'relevant' to the ultimate

inquiry a court must undertake 'when a prison regulation impinges on inmates' constitutional rights': determining whether a prison regulation is 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Turner*, 482 U.S. at 89).

Applying the *Turner* test to the facts of this case, the Court finds that McRoy's opening, copying, providing the inmate a photocopy of the legal mail, and withholding or discarding of the original legal mail pursuant to the GRCC mail policy are related to a legitimate penological interest. First, a valid and rational connection exists between GRCC's mail policy of copying legal mail and withholding or discarding the originals and the legitimate, neutral governmental interests of jail safety and security. Defendants produced evidence that original mail has posed a significant risk to jail security and safety because those items may have been sprayed, soaked, or otherwise coated with illegal substances. *See Strebe v. Kanode*, No. 7:17-CV-00321, 2018 WL 4473117, at *2 (W.D. Va. Sept. 18, 2018), aff'd, 783 F. App'x 285 (4th Cir. 2019) (upholding policy providing inmates with up to three pages of photocopies of their mail, with the remaining pages and attachments only accessible via electronic tablet).

Second, the Court notes that under GRCC's new mail policy Bray had access to his legal mail. Inmates are not barred from receiving mail entirely. Instead, inmates receive photocopies of their legal mail. Moreover, Bray has offered no authority for his argument that inmates should be able to retain original postage-paid return envelopes. Third, accommodating inmates' rights to receive original legal mail would adversely affect prison resources and staff who would be required to check individual pages in order to determine whether the mail contained contraband. And if "the revised policy was removed, . . . it would adversely affect the allocation of prison resources and allow the previously existing risk of the entry of drugs to continue." *Strebe v. Kanode*, No. 7:17-cv-00321, 2018 WL 4473117, at *6 (W.D. Va. Sept. 18, 2018). Finally, Bray has failed to

8

suggest an alternative policy that fully accommodates prisoners' rights at a *de minimis* cost to valid penological interests. The alternative suggested by Bray—a return to permitting inmates to have their original legal mail—would interfere with valid penological interests.

Thus, the Court finds that the *Turner* factors weigh in favor of GRCC's policy, and McRoy is entitled to summary judgment as to Bray's First Amendment claim.

Additionally, Bray fails to allege any evidence to support his Fourteenth Amendment claims for violation of his due process or equal protection rights. Bray fails to set forth any evidence that McRoy failed to notify Bray of the change in mail policy or that McRoy intentionally discriminated against him based on his membership in a particular class. *See*, *e.g.*, *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008). In fact, the evidence reflects that McRoy sent the revised incoming privileged mail process to all GRCC inmates. [DN 1-2 at 11]. Thus, Bray's failure to allege any facts or evidence that would give rise to a Fourteenth Amendment claim is a sufficient reason to grant summary judgment on this claim.[1] Also, having found no constitutional violation, the Court need not address qualified immunity.

### C. State Law Claims

Having dismissed Bray's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" in situations when "the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) (holding that "if the federal claims are dismissed before trial . . . the

---

[1] In as much as Bray claims that McRoy's alleged reading of Bray's privileged mail violates his Fourteenth Amendment's informational privacy rights, Bray's failure to exhaust his administrative remedies with respect to this issue requires dismissal of this claim as well.

9

state claims should be dismissed as well."). Accordingly, the Court will dismiss Bray's state-law claims without prejudice.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 20] is **GRANTED**. **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for noncompliance with the scheduling order [DN 19] is **MOOT**. A judgment will be entered consistent with this memorandum opinion and order.

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Blaine Andrew Bray, *pro se*
counsel of record

December 21, 2022